IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |  |
|---|---|---|
| JIMMY LYVERA FOLEY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:14-cv-4176-BN |
| | § | |
| CAROLYN W. COLVIN, | § | |
| Acting Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Jimmy Lyvera Foley seeks judicial review of a final adverse decision of the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g). For the reasons stated herein, the hearing decision is reversed.

**Background**

Plaintiff alleges that he is disabled as a result of high blood pressure, depression, muscle spasm, and kidney disease. *See* Administrative Record [Dkt. No. 15 ("Tr.")] at 219. After his application for disability insurance benefits was denied initially and on reconsideration, Plaintiff requested a hearing before an administrative law judge ("ALJ"). That hearing was held on August 19, 2013. *See id.* at 54-87. At the time of the hearing, Plaintiff was 48 years old. *See id.* at 22, 56. He has a tenth grade education and has past work experience as a construction laborer. *See id.* at 22, 82. Plaintiff has not engaged in substantial gainful activity since September 28, 2009. *See id.* at 13.

The ALJ found that Plaintiff was not disabled and therefore not entitled to disability benefits. *See id.* at 25. Although the medical evidence established that

Plaintiff suffered from small vessel ischemic disease with migraines, hypertension, obesity, marijuana abuse, bradycardia, degenerative hip and lower spinal changes, and major depressive disorder with treatment noncompliance, *see id.* at 13, the ALJ concluded that the severity of those impairments did not meet or equal any impairment listed in the social security regulations, *see id.* at 18. The ALJ further determined that Plaintiff had the residual functional capacity to perform a limited range of light work, but could not return to his past relevant employment. *See id.* at 20, 22. Relying on a vocational expert's testimony, the ALJ found that Plaintiff was capable of working as a laundry worker, stock clerk/order filler/ticketer, and assembler (sub-assembler) – jobs that exist in significant numbers in the national economy. *See id.* at 23.

Plaintiff appealed that decision to the Appeals Council. The Council affirmed.

Plaintiff then filed this action in federal district court. Plaintiff challenges the hearing decision on two general grounds: (1) the assessment of his residual functional capacity is not supported by substantial evidence and results from reversible legal error because the ALJ improperly rejected the opinions of the Commission's examining psychiatrists; and (2) the finding that Plaintiff can perform other work in the national economy was based on an improper hypothetical question to the vocational expert.

The Court determines that the hearing decision must be reversed and this case remanded to the Commissioner of Social Security for further proceedings consistent with this opinion.

**Legal Standards**

Judicial review in social security cases is limited to determining whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether Commissioner applied the proper legal standards to evaluate the evidence. *See* 42 U.S.C. § 405(g); *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *accord Copeland*, 771 F.3d at 923. The Commissioner, rather than the courts, must resolve conflicts in the evidence, including weighing conflicting testimony and determining witnesses' credibility, and the Court does not try the issues *de novo*. *See Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). This Court may not reweigh the evidence or substitute its judgment for the Commissioner's but must scrutinize the entire record to ascertain whether substantial evidence supports the hearing decision. *See Copeland*, 771 F.3d at 923; *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988). The Court "may affirm only on the grounds that the Commissioner stated for [the] decision." *Copeland*, 771 F.3d at 923.

"In order to qualify for disability insurance benefits or [supplemental security income], a claimant must suffer from a disability." *Id.* (citing 42 U.S.C. § 423(d)(1)(A)). A disabled worker is entitled to monthly social security benefits if certain conditions

are met. *See* 42 U.S.C. § 423(a). The Act defines "disability" as the inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or last for a continued period of 12 months. *See id.* § 423(d)(1)(A); *see also Copeland*, 771 F.3d at 923; *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985). The Commissioner has promulgated a five-step sequential evaluation process that must be followed in making a disability determination:

1. The hearing officer must ascertain whether the claimant is engaged in substantial gainful activity. A claimant who is working is not disabled regardless of the medical findings.

2. The hearing officer must determine whether the claimed impairment is "severe." A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities. This determination must be made solely on the basis of the medical evidence.

3. The hearing officer must decide if the impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations. The hearing officer must make this determination using only medical evidence.

4. If the claimant has a "severe impairment" covered by the regulations, the hearing officer must determine whether the claimant can perform his or her past work despite any limitations.

5. If the claimant does not have the residual functional capacity to perform past work, the hearing officer must decide whether the claimant can perform any other gainful and substantial work in the economy. This determination is made on the basis of the claimant's age, education, work experience, and residual functional capacity.

*See* 20 C.F.R. § 404.1520(b)-(f); *Copeland*, 771 F.3d at 923 ("The Commissioner typically uses a sequential five-step process to determine whether a claimant is

disabled within the meaning of the Social Security Act. The analysis is: First, the claimant must not be presently working. Second, a claimant must establish that he has an impairment or combination of impairments which significantly limit [her] physical or mental ability to do basic work activities. Third, to secure a finding of disability without consideration of age, education, and work experience, a claimant must establish that his impairment meets or equals an impairment in the appendix to the regulations. Fourth, a claimant must establish that his impairment prevents him from doing past relevant work. Finally, the burden shifts to the Secretary to establish that the claimant can perform the relevant work. If the Secretary meets this burden, the claimant must then prove that he cannot in fact perform the work suggested." (internal quotation marks omitted)); *Audler v. Astrue*, 501 F.3d 446, 447-48 (5th Cir. 2007) ("In evaluating a disability claim, the Commissioner conducts a five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity.").

The claimant bears the initial burden of establishing a disability through the first four steps of the analysis; on the fifth, the burden shifts to the Commissioner to show that there is other substantial work in the national economy that the claimant can perform. *See Copeland*, 771 F.3d at 923; *Audler*, 501 F.3d at 448. A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive

and terminates the analysis. *See Copeland*, 771 F.3d at 923; *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

In reviewing the propriety of a decision that a claimant is not disabled, the Court's function is to ascertain whether the record as a whole contains substantial evidence to support the Commissioner's final decision. The Court weighs four elements to determine whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *See Martinez*, 64 F.3d at 174.

The ALJ has a duty to fully and fairly develop the facts relating to a claim for disability benefits. *See Ripley*, 67 F.3d at 557. If the ALJ does not satisfy this duty, the resulting decision is not substantially justified. *See id.* However, the Court does not hold the ALJ to procedural perfection and will reverse the ALJ's decision as not supported by substantial evidence where the claimant shows that the ALJ failed to fulfill the duty to adequately develop the record only if that failure prejudiced Plaintiff, *see Jones v. Astrue*, 691 F.3d 730, 733 (5th Cir. 2012) – that is, only if Plaintiff's substantial rights have been affected, *see Audler*, 501 F.3d at 448. "Prejudice can be established by showing that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision." *Ripley*, 67 F.3d at 557 n.22. Put another way, Plaintiff "must show

that he could and would have adduced evidence that might have altered the result." *Brock v. Chater*, 84 F.3d 726, 728-29 (5th Cir. 1996).

## Analysis

Among the arguments that Plaintiff makes is a single ground that compels reversal and remand – the ALJ's failure to explain the weight that he assigned to the state agency examining consultants' opinions.[1] Plaintiff argues that the ALJ's mental residual functional capacity ("RFC") determination does not address the full range of mental impairments identified by two of the Commission's examining consultants – Barbara Fletcher, Psy. D., and Deborah Greaves, Ph. D. – and that the ALJ did not indicate the weight given to their opinions. Plaintiff also argues that the ALJ found that Plaintiff had moderate limitations to concentrate, persist, or maintain pace but failed to include those limitations in the RFC.

Dr. Fletcher conducted a psychological consultative examination of Plaintiff on February 24, 2011. *See* Tr. at 359-63. Dr. Fletcher observed that Plaintiff appeared depressed and evidenced pain behavior with frequent shifting and grimacing. Plaintiff reported that he had been depressed for several years. He reported symptoms of depression, which included tearfulness, sleep disturbance, decreased energy, decreased motivation to activity, decreased motivation to maintain hygiene and appearance, appetite disturbance, loss of interest in pleasurable activities, social withdrawal, irritability, problems with concentration and memory, and feelings of guilt,

---

[1] By remanding this case for further administrative proceedings, the Court does not suggest that Plaintiff is or should be found disabled.

hopelessness and helplessness. He also reported frequent thoughts of suicide, but denied a plan or intent to commit suicide. And he reported perceptual abnormalities for the last year and a half. He frequently heard the phone ringing when it was not or someone knocking on the door when no one was there. He heard noises outside and around the house when nothing appeared to be there. He heard his name being called when no one had spoken. He occasionally thought that he saw things in his peripheral vision, but, when he looked, nothing was there. Dr. Fletcher noted clear and easily understandable speech; no evidence of thought disorder; no looseness of association, circumstantiality, or tangentiality; appropriate responses; no delusion or illogical thinking; and good memory, insight, and judgment. Dr. Fletcher diagnosed major depressive disorder, recurrent, severe with psychotic features, and a global assessment of functioning ("GAF") rating of 48. Her prognosis was guarded.

Dr. Gleaves conducted a psychological consultative examination of Plaintiff on September 28, 2011 after reviewing medical records. *See id.* at 400-05. Dr. Gleaves noted that Plaintiff reported a long history of depression. At the time of the exam, he reported feeling "overwhelmed by everything." He had difficulty sleeping, decreased appetite, and little interest in activities, and he felt hopeless, worthless, and guilty because he was not working. Plaintiff reported that it was difficult for him to complete tasks because he couldn't concentrate, was easily distracted, depressed, and in pain, and Dr. Gleaves noted that during the evaluation, Plaintiff had some mild difficulty with tasks that required attention, concentration, and short-term memory. Dr. Gleaves noted that Plaintiff expressed his thoughts in a coherent and logical manner and there

were no loose associations, tangents, perseverations, or flight of ideas. Dr. Gleaves further noted that Plaintiff reported ongoing paranoid, suicidal, and homicidal ideation, but no intent to act on it. And Dr. Gleaves noted that Plaintiff reported both auditory and visual hallucinations. Dr. Gleaves diagnosed major depressive disorder, recurrent, with severe psychosis, and a GAF rating of 50. Her prognosis was guarded because Plaintiff had not made a positive response to treatment, and she opined that "[a]t the present time [Plaintiff's] psychiatric symptomatology would make it difficult for him to function appropriately in the full time competitive workforce."

State agency medical or psychological consultants such as Drs. Fletcher and Gleaves are considered experts in the Social Security disability program, and the opinions of these examining physicians may be entitled to great weight if they are supported by the evidence. *See Rawls v. Astrue*, No. 4:10-cv-71-BJ, 2011 WL 725279, at *11 (N.D. Tex. Mar. 2, 2011). Although an ALJ is solely responsible for assessing a claimant's RFC, he must consider and evaluate any opinion by an examining physician or state agency medical consultant ("SAMC") regarding the claimant's RFC. *See* SSR 96-6p, 1996 WL 374180 (S.S.A. July 2, 1996). Specifically, "RFC assessments by [SAMCs] ... are to be considered and addressed in the [ALJ's] decision as medical opinions from nonexamining sources about what the individual can still do despite his or her impairment[s]" and "are to be evaluated considering all the factors ... for considering opinion evidence" outlined in 20 C.F.R. § 404.1527(c). *Id.* The ALJ is not required to expressly discuss each finding by a SAMC or discuss each factor listed in 20 C.F.R. § 404.1527(c), however, because such a detailed analysis applies only to the

ALJ's rejection of a treating sources' uncontradicted opinion. *See Newton v. Apfel*, 209 F.3d 448, 456-58 (5th Cir. 2000). The ALJ also "must explain the weight given to these opinions in [his] decision[]." SSR 96-6p, 1996 WL 374180, at *4.

The ALJ found that Plaintiff had the mental RFC to "understand, remember, and carry out routine and repetitive one-two-three step tasks and instructions and occasionally interact with the general public." Tr. at 20. The ALJ explained that the most recent state agency medical reviewing consultants opined that Plaintiff could perform the full range of medium exertional work and could understand, remember, and carry out simple instructions; attend and concentrate for extended periods; interact appropriately with coworkers and supervisors; and respond appropriately to changes in a routine work setting. *See id.* at 21; *see also id.* at 431. The ALJ gave weight to the opinions of the state agency medical reviewing consultants to the extent that they were consistent with his decision. *See id.* at 21.

The ALJ referenced the opinion of Matthew Turner, Ph. D., who performed a Mental Residual Functional Capacity Assessment on November 16, 2011. *See id.* at 429-31. Dr. Turner found Plaintiff was not significantly limited in the ability to understand, remember, and carry out very short and simple instructions; the ability to make simple work-related decisions; the ability to ask simple questions or request assistance; or the ability to maintain socially appropriate behavior. Dr. Turner then opined that Plaintiff can maximally understand, remember, and carry out simple instructions; attend and concentrate for extended periods; interact appropriately with

co-workers and supervisors; and respond appropriately to changes in a routine work setting.

The ALJ also stated that he was "cognizant that appropriate consideration" must be given to the opinions of the state agency medical consultants," but he did not state the weight he gave those opinions. *See id.* at 21. At step two, the ALJ discussed Plaintiff's medical history, including the evaluations by Drs. Gleaves and Fletcher. *See id.* at 14-18. At step three, the ALJ noted that Drs. Gleaves and Fletcher assessed GAF scores of 48 and 50 for serious symptoms to borderline moderate symptoms. The ALJ explained that the GAF is a numeric scale (0 through 100) used by mental health clinicians and doctors to rate the social, occupational, and psychological functioning of adults and that a GAF score of 41-50 indicates serious symptoms or any serious impairment in social, occupational, or school functioning. *See id.* at 15, 21. The ALJ also explained that GAF scores are generally for the current level of functioning and can result in major variations. *See id.* The GAF scores reflect the clinician's subjective judgment about the severity of the claimant's symptoms and psychological, social, and occupational functioning. *See id.* at 21. And, even though the GAF scale has no direct correlation to the severity requirements in the mental disorder listings, GAF scores are still opinion evidence to consider. *See id.* at 22.

The ALJ then concluded that "limiting the claimant to understanding, remembering, and carrying out routine and repetitive one-two-three step tasks and instructions, as well as occasionally interacting with the general public accounts for

his mental impairments, GAF scores, and is generally consistent with the state Agency reviewing recommendation." *Id.* The ALJ later summarized that, "while the claimant may experience some degree of discomfort and depressive symptomatology at times that are incompatible with the performance of certain levels of sustained work activity, neither the objective medical or non-medical evidence, establishes that the claimant's ability to function is so severely impaired as to preclude unskilled work at the limited light level of exertion." *Id.*

Even though the ALJ discussed Drs. Gleaves' and Fletcher's evaluations at step two and step three, he did not expressly explain the weight he gave to those opinions in determining Plaintiff's mental RFC. *See* Tr. at 20-22. This was error.

The Court therefore must consider whether the ALJ's failure to properly weigh Drs. Gleaves' and Turner's opinions is harmless. *See Webb v. Astrue*, No. 4:08-cv-747-Y, 2010 WL 1644898, at *11 (N.D. Tex. Mar. 2. 2010) (applying harmless error analysis to the ALJ's failure to give weight to an SAMC's opinion). In the Fifth Circuit, harmless error exists when it is inconceivable that a different administrative conclusion would have been reached absent the error. *See Bornette v. Barnhart*, 466 F. Supp. 2d 811, 816 (E.D. Tex. 2006) (citing *Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003)). Plaintiff argues that he was harmed because the ALJ found Plaintiff had moderate difficulties in maintaining concentration, persistence, or pace, as did the state agency examining consultants, but the ALJ failed to account for those limitations

in the RFC. The ALJ instead found that Plaintiff could understand, remember, and carry out routine and repetitive one-two-three step tasks.

The ALJ based his hypothetical to the vocational expert ("VE") at the hearing and subsequently his RFC determination on the RFC findings by Dr. Turner. But those findings do not take "slow persistence and pace" into account, and the ALJ does not explain how he weighed the contradictory findings of Drs. Gleaves and Fletcher on this issue. There is no evidence in the record as to whether the jobs identified by the VE could be performed at "slow persistence and pace," and Plaintiff suffered prejudice because the ALJ concluded that Plaintiff could perform those jobs, which led to a finding of not disabled. *See id.* at 2426.

Accordingly, because it is conceivable that a different administrative conclusion would have been reached if the ALJ had properly weighed Drs. Gleaves's and Fletcher's opinions, remand is required. *See Webb*, 2010 WL 1644989, at *11; *Bornette*, 466 F. Supp. 2d at 816.

## Conclusion

The hearing decision is reversed and this case is remanded to the Commissioner of Social Security for further proceedings consistent with this opinion.

SO ORDERED.

DATED: October 2, 2015

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE